IN THE UNITED STATES DISTRICT COURT

**FILED**

FOR THE NORTHERN DISTRICT OF ALABAMA

JUN 2 5 2007

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | CASE NO. <u>4:07-CR-145-UWC-RRA</u> |
| | ) | |
| **BONNELL HUGHES** | ) | |
| **also know as,** | ) | |
| **BUSTER HUGHES** | ) | |

### PLEA AGREEMENT

The United States of America and defendant BONNELL HUGHES hereby

acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to plead guilty to **COUNTS ONE, TWO, THREE,**

**FOUR, NINE, TEN, ELEVEN,** and **TWELVE,** of the Indictment filed in the

above numbered and captioned matter. In exchange, the United States Attorney,

acting on behalf of the United States and through the undersigned Assistant United

States Attorney, agrees  to recommend the disposition specified below.

Page 1 of  19



## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT:

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in COUNTS ONE and TWO, is:

        a.    Imprisonment for not more than five (5) years;

        b.    A fine of not more than $250,000, or;

        c.    Both (a and b);

        d.    Supervised release of not three (3)years; and

        e.    Special Assessment Fee of $100 per count.

The Parties further understand that the maximum statutory punishment that may be imposed for the crime of making a destructive device or firearm, in violation of Title 26, United States Code, Section 5861(f) , as charged in COUNTS THREE and FOUR, is:

        a.    Imprisonment for not more than ten (10) years;

        b.    A fine of not more than $ 250,000;

        c.    Supervised release term of not more than three (3) years; and

        d.    Special Assessment Fee of $100 per count.

The Parties further understand that the maximum statutory punishment that



may be imposed for the crime of possession of a machine gun, violation of Title 18, United States Code, Section 922(O), as charged in COUNT NINE, is:

     a.    Imprisonment for not more than ten (10) years;

     b.    A fine of not more than $ 250,000;

     c.    Supervised release term of not more than three (3) years; and

     d.    Special Assessment Fee of $100 per count.

The Parties further understand that the maximum statutory punishment that may be imposed for the crime of possession of a destructive device or silencer not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d) , as charged in COUNTS TEN, ELEVEN, and TWELVE is:

     a.    Imprisonment for not more than ten (10) years;

     b.    A fine of not more than $ 10,000;

     c.    Supervised release term of not more than three (3) years; and

     d.    Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA:

The United States would be prepared to prove the following facts at the trial of this case:

In the fall of 2006, a Confidential Informant (CI) working with the ATF met



a forty-six (46) year old white male who identified himself as "Jeff Osborne"
while at a local flea market called "Trade Day." Osborne, whose true name is
Raymond Kirk Dillard, told the CI about the "Alabama Free Militia," a small
militia of which Dillard was a part and in which he held the rank of Major. Dillard
and the CI maintained contact and eventually, Dillard showed the CI two hand
grenades at Dillard's residence.

The CI eventually was accepted into the Free Militia and was given the rank
of Sergeant Major. The CI has been present for conversations among the members
of the Free Militia. From those conversations, the CI learned that the Free Militia
was stockpiling weapons for a war with the United States Government that they
believed to be inevitable due to overbearing government control that had "gotten
out of hand."

The CI also learned that the Alabama Free Militia strongly opposed illegal
immigration, specifically immigrants from Mexico. The CI learned that militia
members had received information about a group of illegal immigrants of Mexican
descent who congregated on weekends in the area of Birmingham, Alabama, for
the purpose of shooting automatic weapons. The DeKalb County branch of the
Free Militia, lead by Dillard, planned to scout the location where this activity
occurred and then "raid the Mexicans." The purpose of this planned "raid" was to



seize the illegal immigrant's automatic weapons for use by the militia.

The CI advised law enforcement that the Free Militia planned to conduct this reconnaissance and "raid" in the near future. The CI further advised that the Free Militia members claimed to own a rocket launcher and rockets that they stored in a small cave in DeKalb County, Alabama, to prevent law enforcement officers from seizing them.

During March, 2007, the CI was at the residence of co-conspirator and Alabama Free Militia member Adam Lynn Cunningham on County Road 309 in Collinsville, Alabama. Cunningham held the rank of Sergeant in the militia. While at the residence, the CI observed approximately four (4) hand grenade devices on a coffee table and two (2) empty hand-grenade hulls brought in by a militia member named Randall Garrett Cole. Cole held the rank of Lieutenant in the Militia.

The CI said that Dillard picked up one of the hand grenades on the table and quickly put a fuse and shotgun-type primer inside of it. Then Dillard said, "That's how easy it is, this one's ready to go." Dillard told the CI that he used explosive powder obtained from fireworks to construct grenades. Dillard also told the CI that Dillard could sell the CI some grenades because Dillard needed money to buy additional grenade hulls from surplus stores.

Page 5 of 19



On March 29, 2007, the CI traveled with Dillard to Bynum, Alabama, to the Outpost Military Surplus store and purchased twelve (12) empty, military training grenade hulls. On or about April 7, 2007, co-defendants Dillard, Cole, and James Ray McElroy met at Cunningham's residence in Collinsville for the purpose of constructing grenades and a silencer from the components acquired by the conspirators. This meeting was secretly video taped. In the video Cole can be seen welding holes closed the bottoms of approximately eleven military hand grenade hulls and welded portions of the silencer. Cole also welded a silencer. Dillard can be head on the tape giving specific instructions to McElroy, Cole and the CI as to how the silencer should be constructed.

On or about April 11, 2007, the defendant, BONNELL HUGHES was introduced to the CI by Dillard at a local restaurant in Collinsville, Alabama. HUGHES was introduced as a Captain in the Alabama Free Militia. The CI wore a recording device to the meeting. Dillard brought the unfinished silencer to the meeting. During the meeting HUGHES told the CI that he would take to silencer back to his house and complete it. HUGHES also told the CI about his arsenal at his home which included 80 to 85 hand grenades. On that same date, HUGHES performed additional work on the silencer by inserting wire mesh between the baffles fo the silencer.



Page 6 of 19



On or about April 13, 2007, Dillard, Cole, and McElroy met at the Cunningham residence in Collinsville for the purpose of continuing to construct grenades from the components acquired by the conspirators. McElroy spray painted the grenade spoons and assisted Dillard with stripping the aluminum sheathing from the fuse assembly.

On or about April 19, 2007, the CI and Dillard met McElroy at Cunningham's residence. Dillard wanted to hide his "grenade making kit" in the woods. McElroy showed the CI were the militia's stash of grenades were buried in the wooded area behind Cunningham's house. Two military ammunition cans were hidden underneath a large rock approximately 75 yards behind Cunningham's house. One ammunition can contained approximately twenty three (23) completed hand grenades. The other ammunition can contained one (1) grenade hull and all the components needed to complete the grenade, except for explosive powder. Dillard did not accompany McElroy and the CI to the hidden material due to recent knee problem.

On April 26, 2007, agents executed a search warrant at HUGHES' residence on Pea Ridge Road in Crossville, Alabama. HUGHES was advised of his *Miranda* rights and he signed a written waiver of those rights. HUGHES immediately cooperated with the agents, pointing out ammunition cans in a shed



by the house which contained eighty (80) hand grenades; and sixty-eight (68)

improvised explosive projectiles. A launcher for the projectiles was found in

HUGHES' house. A silencer was found on top of a white cabinet inside the shed.

HUGHES immediately identified it as a firearms silencer. HUGHES told the

agents he also had a machine gun and directed the agents to a trash can with a

large plastic container lid on top. Inside the trash can, agents found a "Sten" type

machine gun, which was unloaded.

HUGHES told the agent that he had met Dillard about 3 ½ years earlier and

had joined the Free Militia. He was given the rank of Captain. HUGHES said that

he provided money and support for the group. HUGHES said that he had

constructed approximately twenty (20) to twenty-four (24) grenades with Dillard's

assistance inside the shed at his house. HUGHES said he personally purchased

cannon fuse, shotgun primers, empty hand grenade hulls and various gun powders

and black powder for the grenades. HUGHES said that he provided the empty

grenade hulls to Dillard who had someone weld the holes in the bottom closed.

HUGHES said that he personally poured a mixture of black-powder and smokeless

powder into the grenade hulls and Dillard inserted completed fuse -assemblies into

the grenades. HUGHES said he painted the grenades black to make them look

legitimate. HUGHES said Dillard made other grenades which he gave to him.

Page 8 of 19



HUGHES also admitted purchasing the materials to make the improvised explosive projectiles and working with other militia members to make them. He described the manufacture of the silencer as a group effort. HUGHES said he personally inserted wire mesh into the silencer, which he said fit the Sten machine gun found in trash can in his shed. HUGHES said he bought a kit off the internet to make the Sten, but had to get militia members to help him make it. He said he personally fired the machine gun and it worked.

All of the explosives recovered were examined by ATF experts who will testify that they are in fact destructive devices. The machine gun was tested and found to be functionable, as was the silencer.

The defendant hereby stipulates that the facts as stated above are substantially correct.

_____
BONNELL HUGHES

## III. COOPERATION BY DEFENDANT:

The defendant agrees to waive his Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning any/all aspects of the charged crimes, including, but



not limited to, his role/participation in the offenses, as well as the roles taken by

and the extent of participation of all other persons involved in these crimes of

whom the defendant has knowledge. The defendant agrees to testify against all of

these individuals at any time requested by the United States, including, at any

Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial,

retrial, or post-trial hearing. **ALL SUCH INFORMATION AND TESTIMONY**

**SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING**

**MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the

United States as defined and directed by the Bureau of Alcohol, Tobacco, and

Firearms (ATF) or any other investigative agency or body as the United States

Attorney for the Northern District of Alabama may authorize, which cooperation

may include the defendant's periodic submission to a polygraph examination to

determine the truthfulness and accuracy of his statements and information.


**IV. <u>MOTION PURSUANT TO USSG § 5K1.1 AND/OR 18 U.S.C. § 3553(e)</u>:**

In the event the defendant provides assistance that rises to the level of

"substantial assistance," as that term is used in USSG § 5K1.1, the United States

agrees to file a motion requesting a downward departure in the defendant's



sentence. Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the United States may also seek a sentence reduction below said mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e). The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United States Attorney's Office.  Furthermore, the parties agree that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States.

Should the government move to reduce the defendant's sentence, a motion will be filed  prior to the defendant's sentencing hearing and will outline all material assistance which the defendant has provided. The parties clearly understand and acknowledge that because the defendant's plea is being offered in accordance with Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will not be bound by the government's recommendation and may choose not to reduce the sentence at all.

Page 11 of 19



## V. RECOMMENDED SENTENCE:

Pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

    **(a)** That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

    **(b)** That the defendant be sentenced at the low end of the sentencing guideline range as that range is determined by the Court.

    **(c)** That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court.

    **(d)** That the defendant pay a Special Assessment fee of $ 800, said amount due and owing as of the date sentence is pronounced.

## VI. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

In consideration of the recommended disposition of this case, I, BONNELL HUGHES, hereby waive and give up my right to appeal my



conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me. Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:

      **(a)** Any sentence imposed in excess of the applicable statutory maximum sentence; and

      **(b)** Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.

The defendant acknowledges that before giving up these rights, discussed the Federal Sentencing Guidelines and their application to case with attorney, who explained them to satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, **BONNELL HUGHES**, hereby place my signature on the line directly 



below to signify that I fully understand the foregoing paragraphs, and that I

am knowingly and voluntarily entering into this waiver.

**BONNELL HUGHES**

## VII. <u>UNITED STATES SENTENCING GUIDELINES</u>:

Counsel has explained to the defendant, that in light of the United

States Supreme Court's recent decision in <u>United States v. Booker</u>, the federal

sentencing guidelines are advisory in nature. Sentencing is in the court's

discretion and is no longer required to be within the guideline range. The

defendant agrees that, pursuant to this agreement, the court may use facts it

finds by a preponderance of the evidence to reach an advisory guideline range

and defendant explicitly waives any right to have those facts found by a jury

beyond a reasonable doubt.

## VIII. <u>AGREEMENT NOT BINDING ON COURT</u>:

The Parties fully and completely understand and agree that it is the

Court's duty to impose sentence upon the defendant and that any sentence

recommended by the government is NOT BINDING UPON THE COURT,



and that the Court need not accept the government's recommendation. -
Further, the defendant understands that if the Court does not accept the
government's recommendation, does not have the right to withdraw plea.

## IX. <u>VOIDING OF AGREEMENT</u>:

The defendant understands that should (a) violate any federal, state, or
local law after entering into this Plea Agreement, (b) move the Court to
accept plea of guilty in accordance with, or pursuant to, the provisions of
<u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), or (c) tender a plea of *nolo
contendere* to the charges, the agreement will become NULL and VOID, and
the United States will not be bound by any of the terms, conditions, or
recommendations, express or implied, which are contained therein.

## X. <u>OTHER DISTRICTS AND JURISDICTIONS</u>:

The parties understand and agree that this agreement DOES NOT
BIND any other United States Attorney in any other district, or any other
state or local authority.



## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's tax liabilities, if any, or to any pending or prospective forfeiture or other civil or administrative proceedings.

## XII. DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of nineteen (19) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

Page 16 of 19



**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

**I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter:**

**I understand that this Plea Agreement will take effect and will be binding as to the Parties only after all necessary signatures have been affixed hereto.**

**I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.**

6-28-07
**DATE**

**BONNELL HUGHES**
**Defendant**

Page 17 of 19



## XI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised of his rights and all possible defenses. My client has conveyed to me that understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are consistent with the negotiations of counsel and in accord with my client's desires and my best judgement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

6-22-07
**DATE**

**DONALD L. COLEE, JR., ESQ.**
**Defendant's Counsel**

## XII. GOVERNMENT'S ACKNOWLEDGMENT:

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

**ALICE H. MARTIN**
**United States Attorney**

6/25/07
**DATE**

**MICHAEL W. WHISONANT**
**Assistant United States Attorney**

Page 18 of 19

